UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEXSTAR MEDIA, INC.,

    Plaintiff,

v.                                             Case No: 8:22-cv-516-CEH-SPF

JENNIFER JAROS and JAY IS 4
JUSTICE PODCAST, LLC,

    Defendants.
_____

## ORDER

This cause comes before the Court upon Plaintiff Nexstar Media, Inc.'s Motion for Default Judgment against Defendant Jay is 4 Justice Podcast, LLC ("J4J"). Doc. 29. On March 4, 2022, Plaintiff filed a one-count complaint alleging copyright infringement against Defendants Jennifer Jaros and J4J. Doc. 1. Plaintiff now moves for default judgment as to J4J. Doc. 29. The Court, having considered the Motion and being fully advised in the premises, will grant default judgment as to liability. However, Plaintiff will be required to prove its damages at an evidentiary hearing.

    **I.**    **FACTUAL ALLEGATIONS**

Nexstar Media, Inc. ("Nexstar") is an American media company that operates, programs, or otherwise provides services to television stations in 116 markets across 39 states. Doc. 1 ¶¶ 9–10. The company is the owner and authorized licensee of television station WFLA-TV ("WFLA") based in Tampa, Florida. *Id.* ¶ 12. WFLA broadcasts seven hours of live news each weekday under the brand name

NewsChannel 8 and also operates WFLA NOW, a digital live-streaming platform for local news. *Id.* ¶¶ 14–15.

Between September 27 and October 21, 2021, WFLA reported extensively on the manhunt for Brian Laundrie. *Id.* ¶ 16. Laundrie was the former partner of Gabby Petito and a person of interest in her death, which was the subject of national and international press attention. *Id.* WFLA's coverage included numerous videos, original descriptions made by its reporters, and compilations of audio and video put together by its producers. *Id.* ¶ 17. It also included the seven works that Nexstar claims were copied or redistributed without its permission ("the WFLA Works").[1] *Id.* ¶ 18. Nexstar is the exclusive owner of all copyrights in the WFLA Works and promptly sought to register them with the United States Copyright Office. *Id.* ¶¶ 19–20. Among the exclusive rights granted to Nexstar by the Copyright Act, 17 U.S.C. § 106, are the rights to reproduce the Works and distribute them to the public. *Id.* ¶ 21.

Defendant J4J is a Florida limited liability company with a principal address in St. Petersburg, Florida. *Id.* ¶ 8. It creates and distributes true crime podcasts and videos through a number of platforms, including Twitter, Facebook, and YouTube. *Id.* ¶ 23. Nexstar believes that J4J is managed and operated by Defendant Jennifer Jaros. *Id.* ¶ 22. J4J released numerous podcasts and videos related to the search for Brian Laundrie. *Id.* ¶ 24. Included among these were numerous videos streamed or uploaded

---

[1] Although the Complaint lists eleven copyrighted works in Exhibit A (Doc. 1 at 10), Nexstar seeks default judgment as to J4J's infringement of only the seven works that were registered within three months of initial publication. Doc. 29 at 8 n.3.

to YouTube and shared with the public. *Id.* ¶ 27. On multiple occasions, without Nexstar's authorization, consent, or license, J4J's podcasts and videos copied substantial portions of the WFLA Works. *Id.* ¶ 26. Defendant also placed a watermark on the infringing videos, branding them as "Jay is 4 Justice." *Id.* ¶ 28. After discovering the infringement, a Nexstar attorney submitted several takedown notifications to YouTube seeking removal of the infringing works pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c). *Id.* ¶ 30. YouTube promptly removed several of the works and notified J4J. *Id.* In turn, J4J submitted a counter-notification to YouTube, admitting to the use of another's content but claiming that the videos fell within the fair use exception detailed in the Copyright Act. *Id.* ¶ 31. YouTube then reinstated the videos subject to a court determining the merits of Nexstar's claims. *Id.* ¶ 33.

Nexstar filed suit against both Jaros and J4J, asserting one count of copyright infringement.[2] *Id.* ¶¶ 37–41. Nexstar alleged that the infringement was "willful, intentional, and in reckless disregard of and indifferent to" its rights. *Id.* ¶ 39. After serving J4J with a copy of the Summons and Complaint, Nexstar moved for and obtained a Clerk's default. Docs. 17, 18, 19. J4J, a limited liability company, then filed an answer *pro se*, which the Court struck pursuant to the Middle District of Florida's Local Rules. Docs. 20, 23. *See* L.R. 2.02(b)(2), M.D. Fla. ("A party, other than a natural person, can appear through the lawyer only.") The Court directed J4J to file an answer, signed by counsel, no later than June 30, 2022. Doc. 23. After J4J failed to

---

[2] The docket in this case does not reflect service on Defendant Jennifer Jaros. Nor has Plaintiff dismissed Defendant Jaros as a party to this litigation.

do so, Nexstar submitted a second motion for Clerk's default (Doc. 24), and a default was entered on July 13, 2022. Doc. 25.

Now before the Court is Nexstar's motion for default judgment. Doc. 29. Nexstar seeks (i) $10,000 dollars in statutory damages for each of the seven alleged infringements, totaling $70,000 in damages, (ii) entry of a permanent injunction against future infringement, and (iii) an award of reasonable attorney's fees and costs incurred in prosecuting this action. *Id.* at 15–16.

## II.     LEGAL STANDARD

When a defendant fails "to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter" the defendant's default upon the plaintiff's request. Fed. R. Civ. P. 55(a). After the clerk enters the default, the plaintiff may proceed by seeking default judgment. *See* Fed. R. Civ. P. 55(b).

Default does not automatically warrant the entry of default judgment. Although a defendant who defaults is deemed to have "admit[ted] the plaintiff's well-pleaded allegations of fact," *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987), "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3] Similarly, a plaintiff is entitled to only those damages adequately supported by the record. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538,

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4

1544–1545 (11th Cir. 1985). Therefore, a court must conduct an analysis to determine whether the well-pleaded factual allegations of the complaint provide a sufficient basis for a judgment against the defendant. *Nishimatsu Constr. Co.*, 515 F.2d at 1206.

### III. DISCUSSION

#### A. Service of Process and Clerk's Default

Under the federal rules, a plaintiff may serve a corporate defendant by:

> delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . .

Fed. R. Civ. P. 4(h)(1)(B).

A plaintiff may also serve a corporate defendant "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Nexstar's affidavit of service, filed on March 16, 2022, shows that Nexstar served the summons and complaint on Northwest Registered Agent LLC, the registered agent for Jay is 4 Justice Podcast LLC, at its business address. Doc. 17. Therefore, J4J was properly served pursuant to Federal Rule of Civil Procedure 4(h)(1)(B).

Under Federal Rule of Civil Procedure 12(a)(1), Defendants were required to respond to Plaintiff's complaint within twenty-one (21) days from the date of service. They did not. The federal rules require that a defendant's default be entered "[w]hen service of process is properly effected, but the served party fails to respond in a timely manner." *Kelly v. Florida,* 233 F. App'x 883, 885 (11th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Thus, based on J4J's failure to properly respond to the complaint or

otherwise appear in this action, the Clerk properly entered a default against J4J. Docs. 23, 24, 25.

### B. Liability

The sole count of the Complaint is for copyright infringement. Doc. 1 at ¶¶ 37-41. To establish a prima facie case of copyright infringement, "a plaintiff must show that (1) it owns a valid copyright in the work and (2) defendants copied protected elements from the work." *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1236 (11th Cir. 2018). With respect to the first prong, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). With respect to the second prong, a plaintiff must "demonstrate that the alleged infringer[ ] violated at least one exclusive right granted to the copyright holder[ ]." *Intenze Prod., Inc. v. Dead Man Supplies Corp.,* No. 8:15-CV-1074-CEH-AAS, 2016 WL 4158555, at *4 (M.D. Fla. Aug. 4, 2016).

Nexstar sufficiently pleads its claim for willful copyright infringement. It satisfies the first prong by attaching copyright registration certificates showing that it registered the WFLA Works approximately two months after the works were first broadcast (Doc. 1 at 10–22). *See BWP Media USA Inc. v. A.R. Commc'ns, LLC,* No. 6:14-CV-120-ACC-KRS, 2014 WL 5038590, at *3 (M.D. Fla. Oct. 6, 2014) ("[C]opyright registrations are prima facie evidence of the validity of the copyrights.").

6

Nexstar satisfies the second prong by alleging that Defendant copied and distributed the footage on YouTube without its permission (Doc. 1 ¶¶ 25–36). *See Stockfood Am., Inc. v. Fernando Arcay Special Events Corp.,* No. 19-22286-CV, 2019 WL 9904155, at *2 (S.D. Fla. Dec. 31, 2019), *adopted by* 2020 WL 4820472 (S.D. Fla. Jan. 21, 2020) (holding that plaintiff satisfied the second prong of a copyright infringement claim by alleging that defendants "copied the photograph [at issue] without Plaintiff's permission and displayed it on their company's website"). Defendant has not appeared in this action. Therefore, the validity of Nexstar's claim of copyright and the originality of the copyrighted material are unchallenged. As Nexstar has sufficiently pleaded all elements of its copyright infringement claim, the Court finds that it is entitled to default judgment as to liability.

Further, the Court can infer that the infringement was willful based on J4J's default. *See Bowers v. David Jacobs-Publ'g Grp., LLC*, No. 8:19-CV-1361-MSS-TGW, 2019 WL 8989845, at *3 (M.D. Fla. Oct. 31, 2019) ("A court may infer that a defendant's copyright infringement is willful based on the defendant's default alone."). The Court can also infer J4J's willfulness from its decision to continue displaying the works after receiving takedown notices. *See Broad. Music, Inc. v. CD Rest. Grp., LLC*, No. 8:18-CV-363-MSS-JSS, 2019 WL 1905862, at *2 (M.D. Fla. Jan. 28, 2019) (holding that "Plaintiffs ha[d] adequately established that Defendants' copyright infringement was willful" based on, among other things, defendants' continued performance of the work "despite Plaintiffs' notices and demands for Defendants to cease and desist"). The record shows that after Nexstar submitted takedown

notifications to YouTube and had the infringing works removed, J4J submitted counter-notifications claiming that its videos fell within the "fair use" exception, at which point YouTube reuploaded them. Doc. 1 ¶¶ 30–34. Based on J4J's continued infringement, as well as the fact that the Court can infer willfulness from default alone, the Court finds that willfulness has been established.

### C. Damages

Having found that a default judgment is warranted, the Court turns to the issue of damages. Upon a motion for default judgment, the Court can conduct hearings or make referrals "when, to enter or effectuate a judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

When a request for monetary relief is made, the Court may enter judgment without a hearing only if "the plaintiff's claim against [the] defendant is for a sum certain or for a sum which can by computation be made certain," or if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005); *Adolph Coors Co.*, 777 F.2d at 1543. Thus, while an evidentiary hearing on damages is not required upon a motion for default judgment, Courts often hold such hearings when "all essential evidence" is not available in the record. *Smyth*, 420 F.3d at 1232, n.13.

In a copyright infringement case, "a copyright owner may choose between two types of damages: actual damages and profits or statutory damages." *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997). "Courts have discretion to award between

$750 and $30,000 in statutory damages for all infringements of each work under 17 U.S.C. § 504(c)." *StockFood Am., Inc. v. Smarter Changes,* LLC, No. 6:19-CV-391-PGB-DCI, 2019 WL 11499353, at *4 (M.D. Fla. Sept. 19, 2019), *adopted by* 2019 WL 11499358 (M.D. Fla. Oct. 4, 2019). "When the copyright owner sustains the burden of proving that an infringement was committed willfully, the court may increase the award of statutory damages up to $150,000 for each infringement." *Id.* Statutory damages must be calculated according to the number of separately copyrightable works infringed, not on the number of infringements. *Disney Enters., Inc. v. Law,* No. 6:07-cv-1153-GKS-GJK, 2008 WL 203393, at *4 (M.D. Fla. Jan. 23, 2008). It is within the Court's discretion to determine damages within the statutory limits. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 852 (11th Cir. 1990). However, "statutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC,* 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008); *Affordable Aerial Photography, Inc. v. Palm Beach Real Est., Inc.,* 2021 WL 2823270, at *3 (S.D. Fla. July 7, 2021).

In this case, Nexstar seeks $70,000 in statutory damages. Doc. 29 at 8. It argues that a $10,000 award for each of the seven infringed works would be reasonable and appropriate in light of the factors that courts normally use to calculate statutory damages. *Id.* at 8–11. These nonexclusive factors include: (1) the expenses saved and profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the

9

defendant's conduct was innocent or willful; (6) whether the defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *McKennon v. NewsCastic Inc.*, 2018 WL 5847424, at *4 (M.D. Fla. Sept. 7, 2018), *adopted by* 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018).

Nexstar argues that it has made a sufficient showing of damages. Doc. 29 at 8–11. First, it notes that statutory damages are normally tied to a plaintiff's actual damages—and that lost licensing fees are a common method of quantifying such damages. *Id.* at 9. Because Nexstar does not generally offer licenses to copy or redistribute its news streams, it submits evidence of license fees that other television stations charge as "benchmark licenses." *Id.* at 9–10. For example, Nexstar notes that WCPO-TV, an Ohio station, charges around $7,500 per minute of archived footage, whereas KXAS-TV, a Texas station, charges $90 per second of archived footage, meaning that each minute of footage would cost about $5,400. *Id.* at 10. Nexstar also attaches an affidavit from WFLA's Vice President and General Manager, which states that a license for live streams or clips of very recent events would carry even greater value than one for archived news footage. Doc. 29-2 ¶ 9. Based on the benchmark figures, Nexstar asserts that the value of just one of J4J's infringing works (specifically, a 45-minute video) would be almost $250,000. Doc. 29 at 10–11. Nexstar cites this figure to argue that the $10,000 it requests per infringement is reasonable, especially considering that it could seek treble damages based on Defendant's willfulness. *Id.* at 11.

"A reasonable license fee must be determined according to the fair market value of the copyrighted work and cannot be based on undue speculation." *Strober v. Harris,* No. 8:20-CV-2663-MSS-JSS, 2021 WL 7629457, at *3 (M.D. Fla. Nov. 23, 2021). Although Nexstar cites to the costs for archival footage from other news stations to reach its $10,000 licensing figure, it offers no basis to conclude that Defendant (or any other party) would have paid that amount to secure a license to distribute the WFLA Works. Nor does Nexstar present any evidence that it, or another station, has obtained a comparable licensing fee for its content. Because additional explanatory information is needed to prove the damages sought, particularly with respect to the fair market value of the footage, the Court will require an evidentiary hearing at which Nexstar may "endeavor to meet [its] burden of proof" as to damages. *Baumann v. Bank of Am., N.A.,* 734 Fed. Appx. 664, 671 (11th Cir. 2018).

### D. Injunctive Relief

Nexstar also seeks entry of a permanent injunction preventing J4J from further infringement of Nexstar's copyrighted works. Doc. 29 at 12–13. The Copyright Act "gives a court authority to grant injunctive relief to prevent further violations of Plaintiff's copyrighted material." *Markos v. Yacht Charters of Miami.com, LLC,* No. 19-22284-CV, 2019 WL 8989936, at *4 (S.D. Fla. Oct. 2, 2019) (citing 17 U.S.C. § 502), *adopted by* 2019 WL 8989935 (S.D. Fla. Oct. 23, 2019). To obtain a permanent injunction, a plaintiff must show: (1) that it suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014). The four-part test "is regularly satisfied at the default-judgment stage in copyright-infringement cases." *Garden World Images Ltd. v. WilsonBrosGardens.com LLC,* No. 1:19-CV-01035-AT, 2019 WL 8017802, at *7 (N.D. Ga. Oct. 31, 2019).

Permanent injunctive relief is appropriate here. J4J's continued infringement causes Nexstar irreparable harm that cannot be adequately compensated with monetary damages. Further, Nexstar provides evidence of continuing infringement by demonstrating that at least one of J4J's infringing videos is still available on YouTube. *See* Doc. 29 at 10. The Court finds that the equitable remedy of a permanent injunction is appropriate after balancing the hardships between the plaintiff and defendants, and that the public interest will not be disserved under these circumstances. *Fernando Arcay Special Events Corp.,* 2019 WL 9904155, at *4; *see also Arista Recordings, Inc. v. Beker Ent., Inc.,* 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) ("Injunctions are regularly issued pursuant to the mandate of Section 502 [of the Copyright Act] because the public interest is the interest in upholding copyright protection."). As previously stated, Nexstar has sufficiently pleaded the elements of its copyright infringement claim. Meanwhile, J4J has made no effort to defend against these claims. Absent an injunction, there can be no assurance that J4J will not continue the infringing conduct. Therefore, the Court finds that Nexstar is entitled to a permanent injunction on the basis of Defendant's infringement.

Accordingly, it is **ORDERED:**

1. Plaintiff's Motion for Default Judgment (Doc. 29) is **GRANTED** as to liability.

2. The amount of damages will be determined at an evidentiary hearing. The Court will issue a separate notice setting a hearing date.

3. A Permanent Injunction will be entered by separate Order, at the conclusion of this case.

**DONE** and **ORDERED** in Tampa, Florida on March 20, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

13